UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20546-CIV-MOORE/SIMONTON

CONSENT CASE

SALOMON ZAMBRANA,

    Plaintiff,

v.

GEMINIS ENVIOS CORP., et al.,

    Defendants.

_____/

**ORDER**

Presently pending before the Court is Plaintiff's Motion to Dismiss Counterclaim (DE # 9). Defendants filed a response (DE # 12), and Plaintiff replied (DE # 14). Based upon the consent of the parties, this case has been referred to the undersigned Magistrate Judge (DE # 16). After a thorough review of the record and for the reasons stated herein, Plaintiff's motion is **DENIED**.

    I.    **BACKGROUND**

Plaintiff, Salomon Zambrana, sued his former employers for unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, on behalf of himself and all similarly-situated plaintiffs. Plaintiff alleges that between October 2006 and April 2007 he worked for Defendants an average of 91 to 105 hours per week at a rate of $8 per hour, but that Defendants willfully and intentionally failed to pay him time-and-a-half overtime wages for any hours over forty that he worked in a given week (DE # 1).

Defendants, Geminis Envios Corp. ("Geminis"), Eddie A. Fuentes and Rebeca M.

Fuentes, filed an Answer, Affirmative Defenses and Counterclaim (DE # 8).  The Counterclaim alleges that Plaintiff tortiously interfered with Defendants' business relationships (Count I); that Plaintiff became unjustly enriched by his tortious acts (Count II);[1] and, that Plaintiff breached an oral loan (Count III).  According to the Counterclaim, Defendants loaned Plaintiff money and permitted him to live in Geminis' offices; and, in exchange for the loan and a place to live, Plaintiff worked for Defendants.  According to the Counterclaim, however, while Plaintiff appeared to be working, he was in fact surreptitiously accessing Defendants' customer list to solicit those customers' business for his own benefit.  In addition, Defendants allege that they lent Plaintiff $1,500 pursuant to an oral loan which he would repay, at least in part, by working for Defendants, but that Plaintiff left on a trip to Nicaragua without either returning to work for Geminis or repaying the loan (DE # 8).

Plaintiff has moved to dismiss the Counterclaim based on its contention that the Court lacks jurisdiction over the state-law causes of action asserted therein.

## II.     LEGAL STANDARDS

If a Counterclaim is "compulsory," under the meaning of Federal Rule of Civil Procedure 13, it "automatically" gives rise to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  *Ward v. Winter Garden Business Park, LLC*, No. 6:06-cv-53-ORL-31KRS, 2006 WL 1382108, at *2 (M.D. Fla. May 19, 2006); *accord Arcusa v. Lisa Coplan-Gardner, P.A.*, No. 3:07-cv-712-J-33TEM, 2007 WL 3521986, at *1-2 (M.D. Fla. Nov. 15, 2007).  A compulsory counterclaim is a claim that "arises out of the transaction or occurrence that

---

[1] The unjust enrichment counterclaim (Count II) is tied to the breach of an oral loan counterclaim (Count III), and not to the tortious interference counterclaim (Count I) (DE # 1 at 8).

**2**

is the subject matter of the opposing party's claim," Fed. R. Civ. P. 13(b), which is determined by applying the "logical relationship" test.  *See Construction Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1337 n.6 (11th Cir. 1998).  The "logical relationship" test is satisfied where "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant."  *Republic Health Corp. v. Lifemark Hospitals of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985) (internal quotation marks and citation omitted).  Moreover, a state-law counterclaim is compulsory if a separate trial on the state-law claim "would involve a substantial duplication of effort and time by the parties and the courts," because, for example, the federal and state-law claims "involve many of the same factual issues, or . . . where they are offshoots of the same basic controversy between the parties."  *Diamond v. Terminal Ry. Ala. State Docks*, 421 F.2d 228, 236 (5th Cir. 1970).

   A permissive counterclaim, on the other hand, may nevertheless give rise to federal subject matter jurisdiction if the state-law counterclaim is "so related" to the underlying federal claims that they "form part of the same case or controversy" under 28 U.S.C. § 1367(a).  *See Weitzman, LLC v. Micro Computer Resources, Inc.*, No.06- 60237-CIV, 2007 WL 744649, at *4 (S.D. Fla. Mar. 6, 2007) (citing *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 212-13 (2d Cir. 2004); *Channell v. Citicorp Nat'l Servs. Inc.*, 89 F.3d 379, 384 (7th Cir. 1996)); *Thomas v. Commercial Recovery Sys., Inc.*, No. 8:07-cv-1104-T-23MAP, 2008 WL 906770, at *1 (M.D. Fla. Apr. 1, 2008).  The Eleventh Circuit has held that a state-law claim "forms part of the same case or controversy" as a federal claim if they both arise from "a common nucleus of operative fact."  *See Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742-43 (11th Cir. 2006) (citing *United Mine Workers of America v.*

3

*Gibbs*, 383 U.S. 715, 725 (1966)).  However, a permissive counterclaim is subject to the Court's exercise of discretionary authority to decline jurisdiction if:

> (1) the [supplemental state-law] claim raises a novel or complex issue of State law,
>
> (2) the [supplemental state-law] claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *see also Thomas, supra* at *1.[2]  In the absence of any one of the four § 1367(c) factors, the Court *must* exercise supplemental jurisdiction.  *See Palmer v. Hospital Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994).  If one or more of § 1367 factors is present, however, then the Court *may* decline jurisdiction based on that factor, as well as the considerations enumerated by the Supreme Court in *Gibbs*, such as "judicial convenience, fairness to the parties, and whether all the claims would be expected to be tried together."  *Id.* (citing *Gibbs*, 383 U.S. at 725-26).

### III.   ANALYSIS

At the outset, the undersigned notes that Defendants did not argue that their counterclaims are compulsory; rather, they simply addressed the general test for supplemental jurisdiction under 28 U.S.C. § 1367 (i.e., whether the Counterclaim and underlying federal claim arise from a common nucleus of operative fact and, thus, form part of the same case or controversy).  In addition, the undersigned notes that Plaintiff

---

[2]  It is unclear whether a compulsory counterclaim is subject to discretionary refusal to assert jurisdiction pursuant to 28 U.S.C. § 1367(c), but it is difficult to imagine a situation under which facts would arise to support such an exercise of discretion and those facts are plainly not present in this case.

did not argue that the Court is absolutely barred from exercising supplemental jurisdiction over a permissive counterclaim.  Therefore, the Court assumes that permissive state-law counterclaims are capable of giving rise to supplemental jurisdiction if they independently satisfy § 1367.  See *Weitzman, supra* at *4; *Thomas, supra*, at *1.

    A.    <u>Same Case or Controversy</u>

        1.    <u>The Parties' Positions</u>

Plaintiff begins by arguing that this Court lacks the power to assert supplemental jurisdiction over Defendants' Counterclaim which alleges violations of state law that do not arise from a common nucleus of operative fact as the federal FLSA claims alleged in the Complaint and, thus, do not form part of the same case or controversy.  Plaintiff argues that

> [t]he factual circumstances surrounding Defendants['] allegations ([i.e.,] pre-existing business relationships and alleged interference, agreement to work for Defendants in exchange for a loan[,] etc.) do not correlate to the FLSA wage claims.  The FLSA claims are separate and not related

(DE # 9 at 3).

Defendants respond that their counterclaim for breach of an oral loan "rel[ies] on the facts which surround how the Plaintiff came to receive monies from the Defendant;" which tend to prove that he was in Geminis' offices for the purposes of repaying a loan but not because he was an employee; that the time Plaintiff spent at Geminis' offices was a consequence of the fact that he was residing there, not working; and, if he appeared to be working there, it was only because he was "stealing their customer list," rather than conducting business for the benefit of Defendants (DE # 12 at 1-2).  Thus, Defendants argue, the allegations in the Complaint and the Counterclaim "are so

inextricably intertwined as to require the court to exercise it's [*sic*] discretion and . . . accept jurisdiction of the counterclaims" (DE # 12 at 3).

  2. <u>Analysis</u>

  The Court agrees with Defendants that their state-law counterclaims for tortious interference with a business relationship, unjust enrichment and breach of an oral loan are so closely related to Plaintiff's underlying FLSA claim that they form part of the same case or controversy.

  In order to determine whether Plaintiff is entitled to recover overtime wages and to calculate the total value of Plaintiff's overtime wage claim, it will be necessary to establish the number of hours that Plaintiff worked for Defendants. The basis of Defendants' tortious interference counterclaim (Count I) is that, during the time that Plaintiff was supposed to be – and appeared to be – working for Defendants, he was actually stealing their customers for his own benefit (DE # 8). Therefore, the question of whether Plaintiff was genuinely working for Defendants on the one hand or whether he gave the impression of working for Defendants while he accessed Defendants' customer lists to steal their customers is central to both Plaintiff's FLSA claim and Defendants' tortious interference counterclaim.

  Plaintiff also alleges that he was an employee of Defendants for the purposes of the FLSA. Defendants, on the other hand, allege that Plaintiff performed work at Geminis to pay back a series of loans, which also forms the basis of Defendants' counterclaims against Plaintiff for unjust enrichment (Count II) and breach of an oral loan (Count III) (DE # 8 at 4-10). Whether Plaintiff was an employee of Defendants for the purposes of the FLSA and whether Plaintiff was unjustly enriched by breaching an oral loan with Defendants arise from the same set of facts and will require the parties to

argue the same or similar issues at trial.

In sum, Plaintiff's conduct during the hours that he claims to have been working for Defendants without adequate pay arises from a common nucleus of operative fact as Defendants' counterclaim that Plaintiff stole their business during the time he should have been working.  Similarly, Plaintiff's allegation that he was employed by Defendants arises from a common nucleus of operative fact as Defendants' counterclaim that Plaintiff offered to work for Geminis to pay back a loan, and that he became unjustly enriched by breaching that oral agreement.  These claims form part of the same case or controversy and it would be expected that they be tried together because the relevant facts are so thoroughly interwoven among them.

      B.     <u>Declining Supplemental Jurisdiction</u>

          1.     <u>The Parties' Positions</u>

Plaintiff asserts that even if the Counterclaim forms part of the same case or controversy as Plaintiff's FLSA claim, this Court should nevertheless decline to exercise its discretionary jurisdiction over the supplemental state law counterclaims because they raise novel or complex state law issues; and, because the state law counterclaims predominate over the federal FLSA claim (DE # 9 at 4).

First, Plaintiff contends that "state law claims concerning Tortious Interference, Unjust Enrichment and Breach of Oral Loan . . . are comprehensive and particularized regarding legal elements, and have potential for various novelties unrelated to the FLSA" (DE # 9 at 5), and adds that, "[s]hould Defendants' counterclaim be permitted, . . . the jury would be required to be instructed on state laws in addition to the FLSA leading to juror confusion" (DE # 14 at 2).  Second, Plaintiff argues, Defendants' state-law counterclaims have the potential to eclipse his FLSA claims, and litigating all of the

claims together "would cause confusion . . . and the state claims could therefore easily predominate over the FLSA claims" (DE # 9 at 6).

Defendants assert that the cases cited by Plaintiff to demonstrate that the Counterclaim raises a novel or complex issue of state law are distinguishable because those cases "involved very specific state law claims such as "emotional distress[,]" . . . worker's compensation state law[,] state environmental claims or the Florida Insurance [C]ode" (DE # 12 at 2). Defendants also state that "[t]he tortious interference claim does not 'substantially predominate' over the federal claim but rather goes to the heart of Plaintiff's claim that he was 'working for' Geminis" (DE # 12 at 2).[3]

2.  Analysis

Before the Court can consider whether it has the discretionary authority to decline jurisdiction, at least one of the 28 U.S.C. § 1367(c) factors must be present. *See Palmer v. Hospital Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994).

---

[3] For the reasons discussed above, the undersigned rests on her decision on the determination that Defendants' Counterclaim independently satisfies 28 U.S.C. § 1367, and not the "automatic" supplemental jurisdiction conferred by compulsory counterclaims, although the two concepts are closely related. *See Weitzman, LLC v. Micro Computer Resources, Inc.*, No.06- 60237-CIV, 2007 WL 744649, at *4 n.9 (S.D. Fla. Mar. 6, 2007) ("Compulsory counterclaims by definition 'form part of the same case or controversy' as the underlying federal claim). Therefore, it bears mentioning that other Courts in the Circuit have been faced with FLSA cases in which defendants asserted counterclaims similar to the ones asserted here, and concluded that "automatic" supplemental jurisdiction arose because the counterclaims were compulsory. *See Arcusa v. Lisa Coplan-Gardner, PA*, No. 3:07-cv-712-J-33TEM, 2007 WL 3521986, at *2 (M.D. Fla. Nov. 15, 2007) ("[D]uring these alleged overtime hours, [plaintiff] was in fact working on her own personal commercial enterprises and allegedly convert[ing] defendant's] property for these endeavors. . . .  Therefore, the Court finds that the [defendant's] conversion counterclaim is logically related to [plaintiff's] FLSA claims, and the counterclaim is compulsory."); *Ward v. Winter Garden Business Park, LLC*, No. 6:06-cv-53-Orl-31KRS, 2006 WL 1382108 (M.D. Fla. May 19, 2006) (plaintiff's breach of an agreement to work for defendant in exchange for a place to live must be asserted by defendant as a compulsory counterclaim to plaintiff's FLSA claim).

**Defendants' counterclaims neither present a state-law question that is especially novel or complex nor is there a risk that the state-law claims will substantially predominate over the FLSA claim.  See 28 U.S.C. § 1367(c)(1)-(2).[4]  Therefore, as explained below, the Court will exercise supplemental jurisdiction over Defendants' Counterclaim.**

**Defendants' counterclaims are not novel or complex.  The cases that Plaintiff cites, one of which would have required "a de novo review" of a State's "complicated [environmental] regulatory scheme  that is . . . much broader and comprehensive than its federal counterpart," *Diversified Svs., Inc. v. Simkins Indus., Inc.*, 974 F. Supp. 1448, 1455 (S.D. Fla. 1997), and another which presented a question of first impression regarding a State's insurance code as it relates to the regulation of health maintenance organizations, *see Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1364 (S.D. Fla. 2000), are clearly distinguishable from this case.  In the case at bar, Defendants' allegations that Plaintiff tortiously interfered with Defendants' business relationships by stealing their customers (Count I);[5] and, that Plaintiff was unjustly enriched (Count II)[6] when he**

---

[4]  Plaintiff does not – and cannot – argue either that the FLSA claim over which the Court has original jurisdiction has been dismissed or that there exceptional circumstances or compelling reasons to decline jurisdiction in this case.  See 28 U.S.C. § 1367(c)(3)-(4).

[5]  The elements of a tortious interference claim under Florida law are (1) the existence of a business relationship under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant which causes the third party not to perform; and (4) damages.  *See Seminole Tribe of Fla. v. Times Pub. Co.,* 780 So. 2d 310, 315 (Fla. 4th Dist. Ct. App. 2001).

[6]  The elements of an unjust enrichment claim under Florida law are "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."  *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st Dist. Ct. App. 2005) (quoting *Hillman Constr. Corp.*

breached an oral loan (Count III)[7] by failing to repay or work for Defendants as promised are three garden-variety tort claims which do not present any novel or complex issues.

The Court also finds that Defendants' state-law counterclaims will not substantially predominate over Plaintiff's FLSA claim.  The Counterclaim is relatively straight-forward as a factual and legal matter.  To the extent that any complicated issues may arise (i.e., whether Plaintiff truly agreed to work for Geminis solely for the purposes of repaying a loan or whether Plaintiff was stealing Defendants' customers during business hours rather than working for Defendants), those issues – and the concomitant risk of "jury confusion" that Plaintiff raises – could not be avoided by severing the Counterclaim, since they likely comprise the core of Defendants' legitimate defenses to Plaintiff's FLSA claim.  Plaintiff has not indicated that there are any particular peripheral issues that relate *only* to the state-law counterclaims, but which will not be raised by Defendants in the context of defending the Plaintiff's FLSA allegations.  Therefore, there is no risk that the supplemental counterclaims will overshadow the FLSA claim.

Finally, even if one of the § 1367(c) factors is present in this case, it is not necessary to decline jurisdiction based upon consideration of the *Gibbs* factors, such as "judicial convenience, fairness to the parties, and whether all the claims would be expected to be tried together."  *Palmer v. Hospital Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725-26 (1966)).  For all the reasons discussed above, including the fact that Defendants

---

*v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th Dist. Ct. App. 1994)).

[7] A breach of an agreement to repay an oral loan is recognized under Florida law. *See Mosher v. Anderson*, 817 So. 2d 812, 814 (Fla. 2002).  Plaintiff has not suggested, and the undersigned has not discovered, any particular aspect of such a claim that implicates a novel or complex matter of State law based on the facts presented here.

would effectively try their Counterclaim in the context of defending the FLSA claim, the interests of judicial efficiency and fairness to the parties are best served by exercising supplemental jurisdiction because the FLSA claim and Defendants' Counterclaim form part of the same case or controversy.  28 U.S.C. § 1367.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Dismiss Counterclaim (DE # 9) is **DENIED**.

**DONE AND ORDERED** in Chambers in Miami, Florida on June 10, 2008.

_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies to:
All counsel of record